1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

CALIFORNIA SPLENDOR, INC.  a corporation,

CASE NO. 14cv893-GPC(RBB)

11

**ORDER DENYING PLAINTIFF'S**
***EX PARTE* APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT**

                                            Plaintiff,

12

      vs.

13
14

V.J. CATALANO, INC. d/b/a IMPERIAL SALES COMPANY, a corporation,

[Dkt. No. 3.]

15
16

                                          Defendant.

17
18

      On April 15, 2014, Plaintiff California Splendor, Inc. filed a complaint and an *ex parte* application for right to attach order and writ of attachment, or in the alternative, for temporary protective order against V.J. Catalano, Inc. d/b/a/ Imperial Sales Company.  (Dkt. Nos. 1, 3.)  Based on the docket, Plaintiff has not served Defendant with the Complaint and has not filed a certificate of service as to the Application for Writ of Attachment.[1]  No opposition has been filed.  Based on the reasoning below, the Court DENIES Plaintiff's *ex parte* application for right to attach order and writ of attachment, and in the alternative, temporary protective order.

19
20
21
22
23
24
25
26
27
28

---

[1] According to the declaration of Ryan Maughan, Plaintiff's counsel called Kate Ellis, attorney for Plaintiff, informing her that Plaintiff would be filing an *ex parte* application for writ of attachment and sent her a courtesy copy of the pleadings.  (Dkt. No. 3-5, Maughan Decl. ¶¶ 4, 5.)

**Background**

This action arises pursuant to the Perishable Agricultural Commodities Act ("PACA") arising out of Defendant's failure to pay the agreed price for shipment of strawberries.  According to the Complaint, on or about February 23, 2013, at the America Frozen Food Institute convention in Anaheim, California, Isabelle Chalepas, Cal Splendor's Vice-President of Operations, met with Nick Pengelly, head of Business Development for Imperial Sales, and began negotiations regarding the sale of strawberries in connection with a USDA contract.  Shortly thereafter, the parties entered into an oral agreement, (Dkt. No. 3-3, Vano Decl. ¶ 6), whereby Cal Splendor would be the supplier, processor, and packer of strawberries and Imperial would act as the Vendor/Broker if Imperial was awarded a contract with the USDA.  Cal Splendor and Imperial worked together to prepare a bid and submitted a bid for the USDA contract on April 5, 2013.  On April 25, 2013, Imperial was awarded a contract with the USDA to supply strawberries for a school lunch program.  The bid was submitted by Imperial because Imperial had a prior relationship with the USDA.

Imperial was to invoice the USDA and receive payment from the USDA, then remit the payment, minus their broker fee, to Cal Splendor.  In June of 2013, Cal Splendor began shipping strawberries to locations specified by the USDA, including Oklahoma, Texas, and New York.  Shortly after deliveries began, Cal Splendor encountered an issue with the color of some of the strawberries. The USDA found that certain batches of strawberries had discoloration but were otherwise acceptable. Working together, Nick Pengelly and Isabelle Chalepas drafted and submitted a waiver request to the USDA for the loads of strawberries facing this issue.  The USDA agreed to grant the waiver requests in exchange for a 5% discount off the price of the loads. Cal Splendor and Imperial made a deal that Cal Splendor would pay 4% of the discount and Imperial would pay 1%.  The 5% discount to the USDA as well as the 1% off of Imperial's brokerage fee is reflected on all the affected invoices.

In November of 2013, Cal Splendor noticed that Imperial had fallen behind on some of its payments. Defendant was apologetic and provided different reasons why it was unable to timely pay the amounts due. (Dkt. No. 3-2, Smith Decl. ¶ 19; Dkt. No. 3-4, Chelapas Decl. ¶¶ 11-16.) Numerous attempts were made to inquire and demand payment. While Imperial made some subsequent payments, it has not fully paid the amounts due. Defendant even created a payment plan provided to Plaintiff on March 6, 2014. (Dkt. No. 3-2, Smith Decl. ¶ 24, Ex. 8.) Plaintiff alleges that Defendant is indebted in the amount of $315,918.61 for the sale of strawberries grown and shipped by Plaintiff.

In the Complaint, Plaintiff alleges causes of actions for breach of contract; enforcement of Statutory Trust Provision of PACA, 7 U.S.C. § 499e(4); violation of Perishable Agricultural Commodities Act-failure to account and pay promptly; conversion and unlawful retention of PACA Trust Funds; unjust enrichment; declaratory relief; attorneys' fees and costs; and finance charges and/or interest on the unpaid balance owed. (Dkt. No. 1.)

**A.    Civil Local Rule 83.3(h)**

Under the Local Civil Rule,

> A motion for an order must not be made ex parte unless it appears by affidavit or declaration (1) that within a reasonable time before the motion the party informed the opposing party or the opposing party's attorney when and where the motion would be made . . . ."

Local Civ. R. 83.3(h).

Here, the Court questions whether Plaintiff has complied with Local Civil Rule 83.3(h) requiring Plaintiff to notify the "opposing party or the opposing party's attorney." Id.

The declaration of Ryan Maughan, attorney for Plaintiff, states that he has been in communication with Kate Ellis, attorney for Imperial and provided her telephone number. (Dkt. No. 3-5, Maughan Decl. ¶ 4.) On February 14, 2014, Maughan called Kate Ellis and informed her that Plaintiff would be filing an *ex parte* application for

writ of attachment the next day.  (<u>Id.</u> ¶ 5.)  He indicates that he sent Ellis a courtesy copy of the pleading on the morning of April 15, 2014.  (<u>Id.</u>)  When the Court contacted Ms. Ellis to determine if Defendant intended to file an opposition, she indicated that she was not the attorney for Imperial for purposes of this litigation but would inform Plaintiff of the application.  Defendant was not directly served with any of these documents.  The Court questions whether Plaintiff has properly notified Defendant under the Civil Local Rule.  However, the Court addresses whether Plaintiff has satisfied its burden to seek *ex parte* relief in this application.

**B.    *Ex Parte* Application for Writ of Attachment**

Under Federal Rule of Civil Procedure ("Rule") 64, state law provides all remedies when property is to be seized for the purpose of securing satisfaction of a judgment, unless a federal statute governs.  Fed. R. Civ. P. 64.  The effect of Rule 64 is to incorporate state law to determine the availability of prejudgment remedies for the seizure of property to secure satisfaction of a judgment ultimately entered.  <u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Co.</u>, 415 U.S. 423, 436 n.10 (1974).  Attachment is a prejudgment remedy that allows a creditor to have a lien on the debtor's assets until final adjudication of the claim sued upon.  The creditor must follow statutory guidelines in applying for the attachment and establish a prima facie claim; and the court is required to make a preliminary determination of the merits of the dispute.  <u>Lorber Industries of Calif. v. Turbulence, Inc.</u> 175 Cal. App. 3d 532 (1985) (internal citation omitted).  The applicant bears the burden of proving each element by a preponderance of the evidence.  <u>Bank of America v. Salinas Nissan, Inc.</u> 207 Cal. App. 3d 260, 270 (1989).  "[T]he requirements for the issuance of a writ of attachment are strictly construed against the applicant."  <u>Blastrac, N.A. v. Concrete Solutions & Supply</u>, 678 F. Supp. 2d 1001, 1004 (C.D. Cal. 2010).

The Court must find: (1) the claim is one on which an attachment may be issued;

(2) the plaintiff has established the probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for any other purpose than to secure recovery on the claim; and (4) the amount to be secured by the attachment is greater than zero. Cal. Civ. Proc. Code §484.090. In an action on a contract, the total amount of the claim must be a fixed or readily ascertainable amount not less than $500. See Cal. Civ. Proc. Code § 483.010. The probable validity requirement is satisfied "where it is more likely than not that the Plaintiff will obtain a judgment against the defendant on that claim." Cal. Civ. Proc. Code § 481.190.

Plaintiff is also seeking relief *ex parte* pursuant to section 485.010 which provides as follows:

> [N]o right to attach order or writ of attachment may be issued pursuant to this chapter unless it appears from facts shown by affidavit that great or irreparable injury would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice.

Cal. Code Civ. P. § 485.010(a). The requirement of subdivision (a) is met if any of the following are shown:

> (1) Under the circumstances of the case, it may be inferred that there is a danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice.
>
> (2) Under the circumstances of the case, it may be inferred that the defendant has failed to pay the debt underlying the requested attachment and the defendant is insolvent in the sense that the defendant is generally not paying his or her debts as those debts become due, unless the debts are subject to a bona fide dispute. Plaintiff's affidavit filed in support of the ex parte attachment shall state, in addition to the requirements of Section 485.530, the known undisputed debts of the defendant, that the debts are not subject to bona fide dispute, and the basis for plaintiff's determination that the defendant's debts are undisputed.

Cal. Civ. P. Code §§ 485.010(b)(1) and (2).

Plaintiff argues that the writ should be issued *ex parte* under California Code of Civil Procedure section 485.010(b)(1) and (2). First, Plaintiff has not demonstrated

that the property sought to be attached will be concealed, or otherwise made unavailable if the issuance of the order were delayed until matter could be heard on notice.  See Cal. Civ. Proc. Code § 485.010(b)(1); see Western Steel and Ship Repair, Inc. v. RMI, Inc., 176 Cal. App. 3d 1108, 1114 (1986) (inadequate to meet statutory requirement of a showing of "great or irreparable injury" based on an inference that "there is a danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed" pursuant to section 485.010(a) and (b) based on a declaration that if defendant was given notice of the hearing, it would takes steps to hide its assets). In Western Steel & Ship Repair, the court explained that "neither a precarious financial condition nor refusal to pay a disputed claim warrants an inference that a debtor will abscond with all his assets or otherwise conceal them from the creditor."  Id. at 1114.

Similarly, Plaintiff merely alleges that it will be irreparably harmed and any assets that may be available or become available to pay the debt will be "diverted, concealed or otherwise made unavailable to pay any judgment." (Dkt. No. 3-2, Smith Decl. ¶ 31.)  Plaintiff has not provided any evidence of any past dishonesty or concealment of assets.[2]  See Western Steel & Ship Repair, 176 Cal. App. 3d at 1114.

As to section 485.010(b)(2), the Court concludes that while Plaintiff has demonstrated that Defendant has failed to pay the debt underlying the requested attachment, Plaintiff has failed to demonstrate that Defendant is "insolvent in the sense that the defendant is generally not paying his or her debts as those debts become due

---

[2]Plaintiff's President and CEO states that Pengelly told him that Imperial's retained earnings had been lost in an embezzlement and federal wire fraud case; that Michael Brown, a principal of Imperial, had embezzled money from Imperial to another company, and that Brown made jewelry purchases at Kay Jewelers for his wife. (Dkt. No. 3-3, Vano Del. ¶13.)  However, alleged fraud, without evidence that Defendant will likely hide or dissipate assets if given notice of this application does not satisfy the ex parte standard.  Novus Optimum Labs v. Tamayo, No. 13cv1119-JST, 2013 WL 1390457, at *2 (N.D. Cal. Apr. 4, 2013).

. . . ." Id. § 485.010(b)(2).  In one case, the court denied an *ex parte* application for writ of attachment and explained that the plaintiffs have not shown any evidence that defendants generally fail to pay debts and that there could be defenses that have not been raised.  Walters v. Newberry, No. C 06-05396 WHA, 2006 WL 3201042 at *3 (N.D. Cal. Nov. 6, 2006).  Here, Plaintiff's President CEO and President generally states that "I believe that the Defendant is either insolvent or on the verge of insolvency." (Dkt. No. 3-3, Vano Decl. ¶ 17.)  Without evidence, the Court concludes that Plaintiff has not demonstrated that Defendant is not generally paying its debts.

Since Plaintiff has failed to meet the requirements for *ex parte* relief, the Court will defer discussion of the merits of the application until such time as Plaintiff brings the matter before the Court with proper notice to Defendant.

In the alternative, Plaintiff seeks a temporary protective order pursuant to California Code of Civil Procedure section 486.010.  Section 486.010 provides:

> The application shall state what relief is requested and shall be supported by an affidavit, which may be based on information and belief, showing that the plaintiff would suffer great or irreparable injury (within the meaning of Section 485.010) if the temporary protective order were not issued.

Cal. Code Civ. Proc. § 486.010.  Since the Court has already determined that Plaintiff has failed to demonstrate "great or irreparable harm" under section 485.010, the Court DENIES Plaintiff's application for a temporary protective order.

### Conclusion

Based on the above, the Court DENIES Plaintiff's *ex parte* application for writ of attachment, and in the alternative, for a temporary protective order.

IT IS SO ORDERED.

DATED:  April 25, 2014

HON. GONZALO P. CURIEL
United States District Judge